UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL GRIBBEN,

     Petitioner,

v.                        CASE NO. 3:10-cv-764-J-37TEM

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

     Respondents.

_____

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254.  Upon consideration of the second amended petition (Doc. No. 23), the Court ordered Respondents to show cause why the relief sought should not be granted.  Thereafter, Respondents filed a response to the second amended petition for writ of habeas corpus (Doc. No. 26).  Petitioner filed a reply to the response (Doc. No. 38).

Petitioner alleges eleven claims for relief.  For the following reasons, the petition is denied.

## I.  *Procedural History*

Petitioner was charged with robbery with a firearm.  A jury trial was conducted, and the jury found Petitioner guilty as charged.  The trial court sentenced Petitioner to a fifty-year term of imprisonment.  Petitioner appealed, and the First District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which he amended.  The state court denied the motion, and Petitioner appealed.  The First District Court of Appeal of Florida affirmed *per curiam*.

## II.  Legal Standards

### A.  Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the

Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.  *Standard for Ineffective Assistance of Counsel*

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether

3

counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. Analysis

### A.   Claim One

Petitioner asserts that counsel rendered ineffective assistance by failing to obtain an expert to examine the fingerprints found at the crime scene. Petitioner further contends that counsel should have called a fingerprint expert to testify at trial.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim. (App. J at 293-94.) The state court reasoned that testimony was presented at trial establishing that the prints recovered at the scene of the offense did not match Petitioner's fingerprints. *Id.* The state court concluded, therefore, that counsel was not deficient for failing to obtain an expert to testify that the prints did not belong to Petitioner. *Id.*

The state court's denial of this claim is neither contrary to, nor an unreasonable application of, *Strickland*. Detective Mark Copeland admitted on cross-examination that none of the fingerprints taken from the crime scene matched the fingerprints of Petitioner or his co-defendant, Vincent Jackson ("Jackson"). The jury, therefore, heard that Petitioner's fingerprints were not found at the

scene of the robbery.  Petitioner has not shown that counsel was deficient for failing to obtain an expert or that he was prejudiced as a result of counsel's failure to do so.  Accordingly, claim one is denied pursuant to Section 2254(d).

### B.    Claim Two

Petitioner maintains that counsel rendered ineffective assistance by failing to investigate and obtain Petitioner's medical records.  In support of this claim, Petitioner argues that the medical records would have established that he had chipped teeth and tattoos on his right hand and arm at the time of the offense, which would have undermined the victim's and Jackson's identification of Petitioner.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. J at 288-89.)  The state court noted that Petitioner's uncontradicted testimony at trial was that his teeth were chipped and he had tattoos on the date of the robbery.  *Id.*  The state court noted that counsel cross-examined James Rowland ("Rowland"), the victim, regarding his identification of Petitioner and attacked the identification.  *Id.*  Rowland admitted that he did not notice any tattoos on Petitioner's hand although Petitioner was not wearing gloves.  *Id.*  The state court concluded that counsel was not deficient for failing to obtain Petitioner's medical records.  *Id.*

The record reflects that Petitioner testified at trial that his teeth were chipped and he had tattoos on his right hand and arm on the date of the offense.  Rowland described Petitioner to police as looking Hispanic with dark hair, medium complexion, no accent, and a heavy mustache.  (App. C at 129, 139.)  Rowland admitted that he did not observe any tattoos on Petitioner's hands.  *Id.* at 155. Jackson testified that he had known Petitioner for approximately two weeks before the robbery but did not describe Petitioner's appearance on the night of the offense.  *Id*. at 180-84.

No evidence was presented contradicting Petitioner's testimony about his appearance at the time of the offense.  Furthermore, Rowland admitted that he did not see any tattoos, and the jury heard that his description of Petitioner did not include chipped teeth. Moreover, Jackson did not describe Petitioner's appearance at trial, and both Petitioner and Jackson testified they knew each other before the offense.  Thus, counsel was not deficient for failing to obtain Petitioner's medical records to impeach Jackson's or Rowland's testimony regarding their identification of Petitioner.  Likewise, Petitioner has not demonstrated that a reasonable probability exists that the outcome of the trial would have been different had counsel obtained and introduced Petitioner's medical records.  Accordingly, claim two is denied pursuant to Section 2254(d).

### C.   Claim Three

Petitioner   contends   that   counsel   rendered   ineffective

assistance by failing to file a motion to suppress Rowland's photographic line-up identification of him. Petitioner argues that the photographic line-up was unduly suggestive.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. J at 289-92.) The state court reasoned that no basis existed to suppress Rowland's photographic line-up identification of Petitioner because the police did not employ any suggestive methods to taint the identification. *Id*. at 291.

In considering the use of a photographic line-up, the Supreme Court of the United States has held:

> each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States*, 390 U.S. 377, 384 (1968). "Out-of-court identifications are examined for due process violations using a two-part test: 'The court must first decide whether the [procedure] was impermissibly suggestive, and if it was suggestive the court must then determine whether the identification procedure created a substantial likelihood of misidentification.'" *United States v. Smith*, 459 F.3d 1276, 1294 (11th Cir. 2006) (quoting *United States v. Russo*, 796 F.2d 1443, 1452 (11th Cir. 1986)).

The record in the instant case supports the state court's determination that the photographic line-up was not impermissibly suggestive. Detective Copeland testified that his procedure to produce a photographic line-up was to use a photo imaging system to find five other individuals who appear similar to the suspect. (App. C. at 193.) Detective Copeland then showed the line-up to the victim, who identified the perpetrator as the person depicted in photograph three of the photo line-up. *Id*. at 199-200. Nothing before the Court indicates that the photographic line-up or identification procedure was impermissibly suggestive. Furthermore, Petitioner was identified as a perpetrator of the offense by Jackson, who knew Petitioner prior to the offense. Counsel, therefore, was not deficient for failing to move to suppress the identification nor was Petitioner prejudiced as a result. Accordingly, claim three is denied pursuant to Section 2254(d).

### D. *Claim Four*

Petitioner asserts that counsel rendered ineffective assistance by failing to impeach Jackson's trial testimony with prior inconsistent statements and by failing to elicit testimony from Rowland that could have impeached Jackson. In his second amended habeas petition, Petitioner does not specify what prior inconsistent statements counsel should have used to impeach Jackson or what testimony counsel should have elicited from Rowland to impeach

9

Jackson.  *See* Doc. No. 23 at 9.

An application for relief pursuant to 28 U.S.C. § 2254 requires fact pleading.  Vague and conclusory claims failing to state facts which would demonstrate an entitlement to relief can be dismissed without further consideration.  *Blackledge v. Allison*, 431 U.S. 63 (1977); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support a claim of ineffective assistance of counsel).  Petitioner has not specified how counsel should have impeached Jackson.

Furthermore, to the extent Petitioner is attempting to raise this claim as he raised it in the state court, he has not established that the state court's denial of the claim was contrary to, or an unreasonable application of, *Strickland*.  The state court determined that counsel sufficiently attacked the credibility of Jackson during cross-examination and closing argument.  (App. C at 2999-303.)  The state court further determined that the issues or testimony that Petitioner asserted counsel should have used to further impeach Jackson were either without merit or collateral matters not appropriate for impeachment.  *Id*. at 303-05.

The record reflects that counsel attacked the credibility of Jackson during cross-examination and in closing argument.  Thus, the jury heard evidence from which it could have determined that Jackson

10

was not credible.  Moreover, even assuming Jackson could have been further impeached, the jury still heard Rowland testify that he identified Petitioner before and during trial as one of the individuals who broke into his home and robbed him.  In sum, a reasonable probability does not exist that had counsel further attempted to impeach Jackson with his deposition testimony regarding other offenses purportedly committed by him and Petitioner, with other collateral matters, or with other insubstantial inconsistencies, Petitioner would have been acquitted of the offense.  This claim is vague, and Petitioner has not shown that a reasonable probability exists that the outcome of his trial would have been different had counsel attempted to further impeach Jackson.  Accordingly, claim four is denied pursuant to Section 2254(d).

### E.   Claim Five

Petitioner maintains that counsel rendered ineffective assistance by failing to investigate Wilfredo Arturo Meyers ("Meyers") and present evidence that Meyers committed the offense.  In support of this claim, Petitioner argues that Meyers and Jackson were arrested fleeing a robbery seven days after the robbery at issue in this case and Rowland's property was found in the trunk of Meyers' vehicle.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief.  (App. J at 313-14.)  The state court reasoned that testimony regarding Meyers was precluded by the trial court's

11

order granting the State's motion in limine. *Id.* The state court further reasoned that Rowland and Jackson identified Petitioner as one of the perpetrators of the robbery, and Rowland, who saw Petitioner's face during the offense, described Petitioner immediately after the offense and at trial. *Id.* at 318. The state court noted that comparison of the photographs of Meyers, a black male, with Petitioner established that no reasonable probability existed that Rowland could have confused Petitioner for Meyers. *Id.*

The state court's denial of the claim is supported by the record. The trial court precluded admission of evidence about Meyers before trial. (App. C at 1834-85.) Furthermore, counsel had clearly investigated Meyers' potential involvement in the offense given that counsel asked Jackson at trial if Meyers was arrested with Jackson when the items taken from Rowland were found in the vehicle. *Id.* More importantly, Rowland described the perpetrator as Hispanic in appearance with a medium complexion, whereas Meyers is a darker-toned African-American. *Id.* at 129. Assuming, therefore, that counsel had called Meyers as a witness or presented evidence regarding Meyers, a reasonable probability does not exist that the outcome of the proceeding would have been different. Accordingly, claim five is denied pursuant to Section 2254(d).

### F.   Claim Six

Petitioner contends that counsel rendered ineffective

assistance by failing to present evidence that Petitioner was in New Jersey at the time of the robbery. In support of this claim, Petitioner relies on records from the Palisade Emergency Residence Corporation, a shelter in New Jersey.

Petitioner raised this claim in his Rule 3.850 motion.  The state court determined that Petitioner failed to demonstrate prejudice resulting from counsel's failure to pursue an alibi defense because the records from the Palisade Emergency Residence Corporation did not provide an alibi for the date of the robbery.  (App. J at 8.) Instead, the records only showed that Petitioner was at the shelter one week after the offense.  *Id.*

The state court's determination is neither contrary to, nor an unreasonable application of, *Strickland*.  The Palisades Emergency Residence Corporation's records reflect that Petitioner was at the shelter from March 27, 2001 to April 27, 2001.  (App. J at 64.)  The robbery, however, occurred on March 20, 2001.  *Id.*  Thus, Petitioner has not presented any evidence establishing that he was in New Jersey at the time of the offense nor has he shown that prejudice resulted from counsel's purported failure to investigate and present evidence of an alibi.  Accordingly, claim six is denied pursuant to Section 2254(d).

### G.  Claims Seven and Eight

Petitioner contends in claim seven that he was denied his right

to counsel in violation of the Sixth Amendment.  Petitioner argues that his right to counsel had attached and had been invoked by him after his arrest in Connecticut, but he was deprived of counsel after he was extradited to Florida.  Petitioner maintains that a police officer interrogated him without counsel present and thus, Petitioner's statement to the officer that he knew he was under arrest for a robbery committed with Jackson was improperly admitted at trial in violation of the Fifth Amendment.[2]  In claim eight, Petitioner asserts that counsel was ineffective for failing to file a motion to suppress his statement to police.

Petitioner raised these claims in his Rule 3.850 motion.  *See* App. J at 171.  The state court, however, treated the claims solely as one of ineffective assistance of counsel for failing to file a motion to suppress Petitioner's statement.  *Id*. at 294-98.  The state court determined that Petitioner voluntarily initiated the conversation with Detective Copeland and Detective Copeland did not deliberately elicit statements from Petitioner.  *Id*.  The state court further determined that the admission of Petitioner's statement did not result in prejudice because of the substantial evidence against Petitioner.  *Id*.

---

[2]Petitioner's statement was offered to show that he knew who his co-defendant was before being told by the police officer in Florida.

The Supreme Court of the United States has "held that once a defendant's Sixth Amendment right to counsel has attached, he is denied that right when federal agents 'deliberately elicit' incriminating statements from him in the absence of his lawyer." *Kuhlmann v. Wilson* 477 U.S. 436, 457 (1986) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)).  Assuming the defendant demonstrates a violation of his Sixth Amendment right, the remedy for such a "violation is not an automatic reversal of a conviction, but rather the exclusion of evidence tainted by the violation of petitioner's right to counsel." *McCleskey v. Zant*, 890 F.2d 342, 351 (11th Cir. 1989) (citing *United States v. Morrison*, 449 U.S. 361, 365 (1981)).  "The previous use of the tainted evidence will not result in a reversal of a conviction if it constituted 'harmless error.'" *Id*.  Therefore, in instances where constitutional error has occurred, "if the state court . . . did not recognize that there was error, federal habeas relief is still due to be denied if the constitutional error was harmless." *Hodges v. Attorney Gen., State of Fla.*, 506 F.3d 1337, 1343 (11th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112 (2007)).  Such an error will be deemed harmless unless it had a "substantial and injurious effect" on the jury's verdict.  *Id.* (citing *Fry*, 551 U.S. at 121); *see also Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Likewise, "the erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination . . . [is] subject to harmless-error

analysis. . . ." *Neder v. United States,* 527 U.S. 1, 18 (1999).

Assuming Petitioner's statement to Detective Copeland was made in violation of his Fifth and Sixth Amendment rights and thus improperly admitted at trial, such error was harmless in light of the substantial evidence of Petitioner's guilt. Likewise, Petitioner has not demonstrated a reasonable probability exists that the outcome of the trial would have been different had his statement been excluded. Rowland testified that he saw Petitioner's face for a few minutes during the robbery and got a good look at him. Rowland described Petitioner to the police as Hispanic with dark hair, medium complexion, and a mustache. Rowland's description to police matched Petitioner's appearance, and Rowland picked Petitioner out of a photo line-up. Rowland further identified Petitioner as one of the robbers at trial. Jackson also identified Petitioner as the person who robbed Rowland along with him. Moreover, Petitioner testified at trial that the reason he was able to give Jackson's name to Detective Copeland was because his attorney in Connecticut had given him a copy of the arrest warrant on which Jackson's name was included. (App. C at 234-35.) Detective Copeland also conceded that individuals arrested in Florida are generally given a copy of the arrest warrant when they are arrested on a warrant from another state. *Id.* at 220. Thus, the inculpatory value of Petitioner's statement was substantially negated. In sum, Petitioner has failed to demonstrate that the admission of his

16

statement was harmful in light of the substantial evidence of his guilt nor has he demonstrated that prejudice resulted from counsel's failure to move to suppress his statement.  Accordingly, claims seven and eight are denied.

### H.   Claim Nine

Petitioner contends that the State violated his right to due process by seizing and withholding the affidavit portion of the arrest warrant Petitioner received from his attorney in Connecticut. Petitioner further complains that the State insinuated that he had not been given the affidavit.

Petitioner raised this claim in his Rule 3.850 motion.  *See* App. J at 185-88.  The state court determined that the claim should have been raised on direct appeal and was procedurally barred.  *Id.* at 315.

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> (A)  the  applicant  has  exhausted  the  remedies

17

available in the courts of the State; or

(B)         (I)  there is an absence of available State
                 corrective process; or

            (ii) circumstances exist that render such
                 process ineffective to protect the rights
                 of the applicant.

28 U.S.C. § 2254(b)(1).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted).  The Supreme Court of the United States has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.  Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

A federal court must dismiss those claims or portions of claims

18

that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*, holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

In the instant case, the state court found that this claim was procedurally barred from review because it should have been raised on direct appeal. Therefore, claim nine is procedurally barred from review by this Court absent application of an exception to the procedural default bar because it was found to be procedurally barred by the state court based on an adequate and independent procedural ground. *See, e.g., Lang v. Sec'y, Dep't of Corr.*, No. 8:04-cv-2547-T-17EAJ, 2007 WL 1120333, *4 (M.D. Fla. Apr. 13, 2007) (holding claim that trial court erred by failing to renew offer of counsel was procedurally barred because the petitioner did not raise claim on direct appeal).

Petitioner has failed to demonstrate either cause or prejudice to overcome the procedural default.  Likewise, Petitioner has not demonstrated that he is actually innocent.  Accordingly, claim nine is procedurally barred from review by this Court.

### H.  Claim Ten

Petitioner asserts that counsel rendered ineffective assistance by failing to file a motion in limine to exclude testimony regarding statements made by Jermaine Douglas ("Douglas").  Petitioner also argues that counsel was ineffective for failing to object and move for a mistrial after the prosecutor elicited hearsay testimony regarding Douglas.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied the relief pursuant to *Strickland*.  (App. J at 305-06.) The state court noted that defense counsel objected based on hearsay when the prosecutor asked Detective Copeland what name he developed as a suspect after speaking with Douglas.  *Id*. at 305.  The state court concluded that Petitioner failed to demonstrate prejudice resulted from the prosecution asking Detective Copeland two additional questions about Jackson.  *Id*.

At trial, the prosecutor asked Detective Copeland the following questions:

> Q.   When Mr. Jackson was taken into custody, had you identified the second suspect in the robbery at that point and time?

A.    No, sir, not at that time.

Q.    Did you have occasion to talk to an individual by the
       name of Jermaine Douglas?

A.    Yes, I did, that's correct.

Q.    And what name did you develop as a lead for the second
       suspect?

(App. C at 199.)  Defense counsel objected to the final question based

on hearsay, and the objection was sustained.  *Id.*  The prosecutor then

asked Detective Copeland if he developed a photo line-up which

included Petitioner to which Detective Copeland responded

affirmatively.  *Id.*

       Defense counsel objected based on hearsay to the name developed

of the second suspect after speaking with Douglas, and the objection

was sustained.  Detective Copeland did not indicate what Douglas had

told him regarding Petitioner.  The remaining questions asked by the

prosecutor regarding Detective Copeland's investigation and

development of the second suspect did not call for hearsay answers

nor has Petitioner shown that they were improper.  Thus, defense

counsel was not deficient for failing file a motion in limine to

exclude testimony about Douglas or for failing to object and move

for a mistrial.

       Furthermore, Petitioner has not demonstrated that a reasonable

probability exists that he would have been acquitted had counsel filed

a motion in limine or further objected and moved for a mistrial.  The reference to Douglas during Detective Copeland's testimony was minimal.  Moreover, the evidence against Petitioner included eyewitness identifications of Petitioner by both the victim and Petitioner's co-defendant.  Consequently, claim ten is denied pursuant to Section 2254(d).

**I.   *Claim Eleven***

Petitioner asserts that counsel rendered ineffective assistance by failing to "object to many instances of prosecutorial misconduct during trial and . . . move for mistrial where appropriate." (Doc. No. 23 at 19.)  Petitioner does not specify in his second amended habeas petition what actions he believes constituted prosecutorial misconduct or on what basis counsel should have moved for mistrial. In his reply, Petitioner appears to indicate that the prosecutor made improper statements in opening statement and when questioning Petitioner, accused Petitioner of being a liar, and injected his personal opinions. (Doc. No. 38 at 24.)

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief. (App. J at 306-07.)  The state court reasoned that the prosecutor's statements during opening statement and questions to Petitioner were proper.  *Id.*  The state court concluded, therefore, that counsel had no basis to object or move for mistrial. *Id.*

The record reflects that the prosecutor gave a brief opening statement outlining the facts he believed the evidence would establish.  (App. C at 104-17.)  None of the statements made by the prosecutor were improper.  Moreover, the jury was instructed that the statements made by the attorneys during opening statements were not evidence and should not be considered as such.  *Id.* at 102.  Similarly, with respect to the cross-examination of Petitioner, *see id.* at 236-39, none of the prosecutor's questions were improper.  Finally, in closing argument the prosecutor argued reasonable inferences drawn from the evidence presented.  *See id.* at 262-83; *see also Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.").  Additionally, the trial court instructed the jury that it must determine Petitioner's guilt based solely on the evidence presented.  *Id.* at 301, 303-04.  In sum, counsel had no basis on which to object to the prosecutor's opening statement, cross-examination of Petitioner, or closing argument nor did any basis exist to move for mistrial.  Petitioner has failed to demonstrate either deficient performance or prejudice, and claim eleven is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed

herein have been found to be without merit.

## IV. *Certificate of Appealability*

If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." *Id.*  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    The Second Amended Petition for Writ of Habeas Corpus (Doc. No. 23) filed by Paul Gribben is **DENIED,** and this case is **DISMISSED WITH PREJUDICE.**

2.    If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

3.    The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 5th day of June, 2013.


ROY B. DALTON JR.
United States District Judge


Copies to:
OrlP-1 6/5
Counsel of Record
Paul Gribben